E-FILED
Tuesday, 05 October, 2004 02:23:54 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CHARLES ROBINSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 03-C-3059 |
| ) | |
| UNITED STATES OF AMERICA, ) | Hon. Richard Mills |
| ) | |
| Respondent. ) | |

## DECLARATION OF BRIAN E. COTHROLL IN SUPPORT OF MOTION TO SUPPLEMENT THE RECORD ON APPEAL

I, Brian E. Cothroll, declare as follows:

1. On June 3, 2004, acting pursuant to the Criminal Justice Act, the United States Court of Appeals for the Seventh Circuit appointed Thomas L. Shriner, Jr. as counsel for petitioner-appellant, Charles R. Robinson, IV, to represent him in appeal no. 04-1223. Petitioner-appellant's opening brief is due with the Seventh Circuit on October 15, 2004.

2. Prior to Mr. Shriner's appointment, my firm and I had no involvement in or knowledge of the case. The trial of this case occurred in Springfield, Illinois. Our offices are located in Milwaukee, Wisconsin.

3. Petitioner-appellant is presently incarcerated in the Greenville Federal Correctional Institution in Greenville, Illinois.

001.1665311.1

4.  Petitioner-appellant, Mr. Robinson, had previously filed a *pro se* motion with this Court on March 14, 2003, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence ("habeas petition" or "petition").  As one of the grounds supporting his petition, Mr. Robinson claimed he received ineffective assistance of counsel when his trial counsel failed to re-voir dire the jury after an 18-day recess between the date the jury was impaneled (November 14, 1997) and the date the trial began (December 2, 1997).

5.  This Court denied the habeas petition on October 27, 2003 on the grounds that it was procedurally barred because Mr. Robinson had failed to file the petition within a year of the denial of his petition for a writ of certiorari in his criminal case, which occurred on October 1, 2001.  The Court did not reach the merits of Mr. Robinson's habeas petition.

6.  In its order appointing us as counsel, the Court requested that we address the procedural issue and the ineffective assistance of counsel claim outlined above, in addition to any other issues that merited discussion on appeal.

7.  Following our appointment on June 3, 2004, Mr. Shriner asked me to review the record received from the Clerk of Court for the Seventh Circuit, which contained Mr. Robinson's habeas petition, a supporting memorandum of law raising 16 grounds challenging his conviction, the decisions of this Court denying his habeas petition and certificate of appealability, and other papers related to the habeas proceedings.

8. As the record did not contain the record in Mr. Robinson's underlying criminal case, counsel moved to withdraw the record in case no. 97-CR-30025, which this Court granted on July 29, 2004.

9. Although this Court granted counsel's motion, counsel never received a copy of that order. As a result, in mid-August 2004, counsel reviewed the docket report on the Central District of Illinois' PACER website and learned that the motion to withdraw the record had been granted. Having not received the record and uncertain as to its status, counsel contacted the office of the clerk of this Court on or about August 18, 2004. During that conversation, the clerk's office informed counsel that they were not aware that the motion had been granted, and that the record in case no. 97-CR-30025 had not been forwarded. The clerk's office stated that they would see that the record was forwarded to our Milwaukee offices.

10. Following that conversation, on September 1, 2004, counsel received two boxes containing eight volumes of transcript and four volumes of pleadings, which comprise the record in case no. 97-CR-30025. Since receiving the record, counsel has reviewed it in order to address the issues presented on appeal including the ineffective assistance issue specifically raised by Seventh Circuit.

11. As indicated in counsel's previous motion before this Court, the record did not include a transcript of the November 14, 1997 hearing during which voir dire was conducted and the jury was impaneled. This transcription was necessary to

001.1665311.1

address the above-mentioned ineffective assistance of counsel issue raised by Seventh Circuit.

12. In July 2004, counsel sought to have this hearing transcribed and contacted the clerk's office regarding local procedures for doing so under the Criminal Justice Act. On August 3, 2004, following multiple conversations with the clerk's office and the federal defender's office regarding local procedure for obtaining the transcript, counsel requested the transcription of a hearing on November 14, 1997. Counsel received that transcript on or about September 20, 2004.

13. Counsel for Mr. Robinson have spoken with Assistant United States Attorney Gregory M. Gilmore, counsel for the government, and Mr. Gilmore has stated that he has no objection to Mr. Robinson's motion to supplement the record to include the record in case no. 97-CR-30025 and the November 14 transcript.

14. Additionally, to address the ineffective assistance of counsel issue raised by the Seventh Circuit, counsel sought to incorporate the newspaper articles referred to in Mr. Robinson's habeas petition (along with an additional article counsel found while retrieving the other four). Counsel obtained copies of these articles through the Springfield, Illinois State-Journal Register's archival website. *Available at* [http://www.sj-r.com/search/mediastream.asp](http://www.sj-r.com/search/mediastream.asp) (Oct 1, 2004). True and correct copies of these articles are attached as Exhibits A-E.

4

15. These five articles refer to various drug-related crimes and were published in the State-Journal Register between November 14, 1997 and December 2, 1997. This time frame constitutes the 18-day hiatus that serves as the basis for Mr. Robinson's ineffective assistance of counsel claim that the Seventh Circuit requested current counsel address.

16. These articles were never made part of the record in case no. 97-CR-30025 because this issue was not raised, either during trial or on appeal.

17. These articles were also not made part of the record in this case by Mr. Robinson. Although he could have included them in his *pro se* habeas petition, and specifically referenced them in the petition, Mr. Robinson, acting *pro se*, did not include copies of the articles.

18. Because Mr. Robinson contends that the jury may have been improperly influenced by drug-related newspaper articles that were published during the 18-day recess following the date the jury was impaneled (when it was made of aware of the drug-related indictments against Mr. Robinson), it is necessary to include these articles in the record. Since Mr. Robinson's trial counsel failed to re-voir dire the jury and ascertain whether such an improper taint existed, Mr. Robinson contends he did not receive effective assistance of counsel within the meaning of the Sixth Amendment. To present the issue fully to the Seventh Circuit, these articles are necessary.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 1st day of October, 2004.

_____
Brian E. Cothroll

The State Journal-Register Archives

# State Journal-Register, The (Springfield, IL)
## WITNESS: MURDER SUSPECT FIRED FATAL SHOT ANDREW TAYLOR ON TRIAL FOR SHOOTING OF ANTONIO THOMAS

November 19, 1997
**Section:** LOCAL
**Edition:** M1,M2
**Page:** 15
CHRIS DETTRO STAFF WRITER

A neighbor and admitted drug customer of the late Antonio Thomas testified in Sangamon County Circuit Court Tuesday that she saw Andrew Taylor shoot

Thomas during a dispute over drugs at Thomas' back door.

Taylor, 30, of the 1300 block of Outer Park Drive, is on trial for first-degree murder in the shooting death of 21-year-old Antonio Thomas on Jan. 19. Taylor also is charged with aggravated battery with a firearm in connection with the same incident in which another like-named 21-year-old, Antonio D. Thomas, was shot in the leg. The shootings occurred in the 500 block of North Fifth Street.

Sharon Bland, who admitted she smokes crack cocaine and had bought rock cocaine from Thomas, testified she was standing nearby when Taylor and another man went to Thomas' door shortly before 9 p.m. She said the other man, later identified by police as Lorenzo Gray, told Thomas he had bought drugs from him the previous evening and that "the stuff was no good."

Bland, under questioning by assistant state's attorney Michael Vujovich, said Thomas, who was standing in his open doorway, told the man he couldn't have purchased bad drugs from him because he (Thomas) hadn't been there the night before.

"I don't owe you nothing, but I just won some money on the boat and I'm going to give you something," Bland said Thomas replied.

As Thomas reached back inside the apartment toward the television, where he kept cocaine, Taylor fired three shots, she testified. Thomas was shot in the upper chest and thigh. He died from internal bleeding from a punctured aorta, according to testimony from pathologist Dr. Travis Hindman.

Antonio D. Thomas, who was sitting in the living room when the shooting began, was hit in the leg.

Defense attorney Joseph Miller said in his opening statements that the evidence will show Taylor shot Thomas in self-defense because Thomas reached for a gun on the TV. Bland was adamant, however, that she never saw a gun in Thomas' apartment or knew him to have one.

"The only weapon I saw the entire time was the gun Andy (Taylor) had," she said.

Jonathan Allison, who also was in the apartment with the two Antonio Thomases that night, testified that he was sitting on the couch while Antonio Thomas answered the door


EXHIBIT A

and talked to whoever was outside.

Allison, a longtime friend of Thomas, said the three men had been in the apartment drinking for about 30 minutes when there came a knock on the door. He said he couldn't see who was outside, nor could he hear the conversation.

He testified Antonio Thomas told the visitors to "get off my porch" just before the three shots were fired. He said he never saw a gun on or near the television or anywhere else in the apartment.

Allison, who is on probation for a previous drug offense, said the men were not smoking marijuana in the apartment that night.

He said he had never bought drugs from Thomas and when he was asked if he had ever known Thomas to deal drugs, replied, "Maybe in his free time."

Bland testified she had come to Thomas' apartment in the company of Taylor earlier in the evening to buy drugs and saw the three men with marijuana. She said on that visit Taylor began arguing with Thomas about his friend buying bad drugs the night before. Thomas told him to leave and refused to sell him drugs then, Bland said.

Taylor, arrested by Chicago police on Feb. 3, was returned to Springfield the next day.

Chicago police detective Thomas Dornan testified that Taylor told him he and "Zo" had gone to Thomas' apartment to confront him about selling "bogus" narcotics. Dornan said Taylor told him that when "Zo" reached for a gun, he (Taylor) ran.

The second man allegedly on the porch with Taylor the night of the shooting has not been apprehended.

Testimony will continue today before Circuit Judge Jeanne Scott.

All content ? 1997- State Journal-Register, The (Springfield, IL) and may not be republished without permission.

The State Journal-Register Archives

# State Journal-Register, The (Springfield, IL)
JUDGE SENTENCES WOMAN, SON TO PRISON ON COCAINE CHARGES

November 19, 1997
**Section:** LOCAL
**Edition:** M1,M2
**Page:** 15
CHRIS DETTRO STAFF WRITER

A Springfield woman and her 20-year-old son pleaded guilty to drug charges Tuesday and were sentenced to six- and nine-year prison terms, respectively.

Georgia McGrone, 39, who has previously alleged that police harassed her and her family, and her son, Craig McGrone, both of the 1500 block of East Edwards Street, each pleaded guilty to separate charges of delivery and possession of cocaine. They were sentenced by Circuit Judge Bob Eggers to consecutive three-year prison terms on each charge.

In addition, Craig McGrone pleaded guilty to a second charge of delivery of cocaine and received a third three-year sentence, said assistant state's attorney Carol Walker, who prosecuted the case. The McGrones were represented by Springfield attorney Michael Taylor.

In exchange for the guilty pleas, prosecutors dismissed several other drug charges against the McGrones, who have had more than a year of run-ins with police and health inspectors. The family was evicted from its last residence in the 100 block of South 13th Street in May after allegedly dealing drugs from the home.

Georgia McGrone is the mother of eight, whose ages range from 2 to 21, and in the past has frequently complained about being unfairly singled out by police, who alleged she and her sons sold drugs from their home on more than one occasion.

Most of the charges against Georgia and Craig McGrone stemmed from a police raid on their Edwards Street home on July 31. A two-month investigation, including undercover drug buys, led police to seek arrest warrants from a grand jury on that date. The charges concerned alleged cocaine sales to either undercover police officers or wired informants between June 14 and June 22. Both Craig and Georgia McGrone pleaded guilty to a charge of possession of cocaine stemming from the July 31 raid, and each pleaded guilty to charges of delivery of cocaine based on a June 14 undercover buy, Walker said. Craig McGrone admitted selling $40 worth of cocaine to an undercover officer, while Georgia McGrone sold the same officer another $10 worth on that date.

Craig McGrone also pleaded guilty to a charge of delivery of a controlled substance stemming from a Dec. 18, 1996, incident in which a passenger in his car was found to have cocaine in her possession during a traffic stop.

Another McGrone son, Curtis McGrone, 21, still faces a charge of delivery of a controlled substance and is scheduled to go to trial Dec. 15. The charge against him also is a result of a controlled buy. Curtis McGrone is currently free on bond.


EXHIBIT B

All content ? 1997- State Journal-Register, The (Springfield, IL) and may not be republished without permission.

# State Journal-Register, The (Springfield, IL)
MURDER CHARGE REJECTED / TAYLOR CONVICTED OF MANSLAUGHTER

November 21, 1997
**Section:** LOCAL
**Edition:** M1,M2
**Page:** 13
CHRIS DETTRO STAFF WRITER

Jurors Thursday rejected a first-degree murder charge against a Springfield man accused of shooting another to death in a dispute about drugs, instead

convicting him of involuntary manslaughter.

Andrew Taylor, 31, admitted during a four-day trial that he fired the shot that killed Antonio Thomas, 21, in Thomas' doorway in the 500 block of North Fifth Street on Jan. 19. He testified that he shot Thomas only after he saw a gun in his hand.

Taylor said he fired three shots from a .38-caliber revolver while running away and didn't know he had hit both Antonio Thomas and Antonio D. Thomas, now 22, until he heard a news report about the shooting the next day.

The Sangamon County jury found Taylor not guilty of aggravated battery with a firearm in connection with wounding Antonio D. Thomas in the leg. Antonio D. Thomas had been inside the apartment when his like-named friend was shot while standing in the doorway arguing about drugs with a friend of Taylor's.

By finding Taylor guilty of involuntary manslaughter, the seven-woman, five-man jury found that Taylor unintentionally caused Thomas' death without lawful justification by acting in a reckless manner. The panel deliberated for more than five hours.

The verdict form allowing an involuntary manslaughter conviction was sent to the jury over the objection of assistant state's attorney Michael Vujovich. A second-degree murder verdict was another possibility.

Involuntary manslaughter is punishable by two to five years in prison, with five to 10 years possible on an extended term. Circuit Judge Jeanne Scott set sentencing for Jan. 23. "This jury was very diligent and worked very hard deciding this case," said defense attorney Joseph Miller.

During closing arguments Thursday morning, attorneys focused on what happened in Thomas' doorway that night, and whether or not Thomas had a gun.

Vujovich argued Taylor was the only witness who said Antonio Thomas had a gun at the apartment that night. He cited other testimony from Springfield police detective Pat Ross that "smart drug dealers" don't keep guns at the houses where they sell drugs because the presence of a gun enhances federal drug sentences.

"You've been given a tour of the seamier side of Springfield, of the drug culture," Vujovich told the jury. "The only person you heard talk about a gun was the defendant."


EXHIBIT C

Vujovich said Taylor wasn't involved in the argument between Thomas and Alonzo Grate, and that any threat to Taylor had ended when Thomas began closing the door, as one witness testified.

"Is it intentional when you shoot three times?" Vujovich asked.

He also pointed out that after the shooting, Taylor registered under a false name at a Springfield motel before fleeing to Chicago. When arrested in Chicago, he gave police a false name.

Miller said if Taylor had wanted to kill Thomas, he had an opportunity to do so when he and Sharon Bland visited the apartment to buy drugs earlier that evening.

Miller suggested that prosecution witnesses who had been at the apartment had reasons to be less than truthful on the stand.

"They lied because they were hiding something, to protect themselves," Miller said. "They see him (Taylor) as the person who killed their drug dealer."

He said any one of several people who were in the apartment after the shooting could have removed the gun that Taylor said he saw in Thomas' hand.

Vujovich suggested that Taylor was simply checking out Thomas' apartment on his first visit and planned to return with his friend Grate and rob Thomas later.

"He wanted to check if there were any guns in that house, and he never saw a gun," Vujovich said. "He has to say he saw a gun or this self-defense story won't fly."

Taylor

All content ? 1997- State Journal-Register, The (Springfield, IL) and may not be republished without permission.

The State Journal-Register Archives

# State Journal-Register, The (Springfield, IL)
TITLE: POLICE BEAT

November 23, 1997
**Section:** LOCAL
**Edition:** M1
**Page:** 12

o A 10-week-old Springfield child was burned over 25 to 30 percent of her body when her 12-year-old baby sitter gave her a hot-water bath, police

said.

The girl, who was born one month premature, remained in fair condition Saturday at Memorial Medical Center's burn unit, police said.

She had been transferred there from St. John's Hospital, where she was initially taken about 2 a.m. Saturday.

Detectives were investigating the case to see if the injury resulted from any wrongdoing. They plan to forward the results of their probe to the state's attorney's office for review. o Burglars stole a total of $295 cash from purses in four unlocked cars parked at the Oaktree Learning Academy, 1315 W. Lawrence St., Friday.

The purses -- one from each car -- were taken between 5 and 5:20 p.m.

After a report of one car burglary, an officer searched the alley north of Lawrence and found the four purses. Three of the purses had not yet been reported missing.

All purses were reportedly missing money but nothing else. o A 28-year-old man wanted for skipping court was arrested on a drug charge at 11th and Edwards streets Friday.

Police are seeking a charge of manufacture/delivery of a controlled substance against Lavon A. Bates, address unavailable. Bates was also wanted on a warrant for a 1996 felony forgery case.

An officer saw Bates walk away from a car parked in a vacant lot at 11th and Cook streets. The curious officer caught up with Bates a block north.

Information on the type of drugs allegedly found was unavailable Saturday. o Someone took a $150 microwave and a carton of cigarettes from a home in the 1400 block of North 17th Street Friday.

The occupant, 31, told police the items must have been stolen while he was at work, between 7:20 a.m. and 5:20 p.m. o A customer at the On Broadway nightclub, 210 Broadway, was arrested early Saturday morning after he allegedly caused a disturbance and was caught carrying less than 30 grams of marijuana.

William Evans, of the 600 block of Edwards, was celebrating his 31st birthday, when he was reportedly escorted out of the bar at 3:10 a.m. An on-duty officer attempted to arrest Evans after he saw him allegedly argue and push the security agent for the bar. Evans



allegedly refused to cooperate, and police ended up spraying him with a mace-like spray. Upon his arrest, police allegedly found the marijuana and a pipe for smoking it. He faces charges of possession of marijuana, possession of drug paraphernalia, trespassing and disorderly conduct. o A 12-year-old boy walking home from the store with milk, eggs and candy was robbed by two older boys on bicycles at Seventh and Allen streets.

The boys rode up to the victim, and one lifted him up and threw him on the ground, stealing the groceries, $5 in cash, a Link card and his shoes. o Police are seeking a teenage boy who is suspected of slashing tires on four cars in the area of 17th and Mathew streets. The tires of the cars, including a 1985 Toyota and a 1993 Geo Prism, were slashed between 2 and 4 a.m. Saturday. One of the victims reported that the boy who is suspected of the crimes is known for stabbing animals, too.

All content ? 1997- State Journal-Register, The (Springfield, IL) and may not be republished without permission.

The State Journal-Register Archives

# State Journal-Register, The (Springfield, IL)
ALLEGED GANG LEADER GETS 11-YEAR SENTENCE

December 2, 1997
**Section:** LOCAL
**Edition:** M1,M2
**Page:** 10
CHRIS DETTRO STAFF WRITER

A man prosecutors say is the acting leader of the Gangster Disciples street gang in Springfield was sentenced Tuesday to 11 years and 3 months in

prison after earlier pleading guilty to distribution of crack cocaine.

Jerry Broomfield, 30, of the 1000 block of East Enterprise Street is cooperating with federal authorities and may have his sentenced reduced at a later date, depending on his continued cooperation.

Assistant U.S. attorney David Risley called Broomfield, who also faces a first-degree murder charge in Tennessee, "one of the most violent and dangerous predators in Springfield, as evidenced by his long criminal history and reputation for violence."

He said Broomfield is a former assistant governor and the acting governor of the Gangster Disciples in Springfield.

Risley said Broomfield's past convictions qualify him as a career offender under federal sentencing guidelines.

Because of Broomfield's current cooperation with the government, Risley recommended the 135-month sentence to U.S. Judge Richard Mills, and assistant federal defender David Mote concurred.

Risley said the recommendation represented a 10 percent downward departure from the sentence suggested by federal guidelines based on the offense and Broomfield's criminal history.

"It is a good-faith recommendation, a first step," Risley told Mills. "We're hoping this is a first step on his part."

Risley said Broomfield's position "gives him access to circles we want to know about. He can provide information on the inner workings of the Gangster Disciples and related drug-trafficking organizations."

Broomfield pleaded guilty to selling six-tenths of a gram of cocaine base, or crack, for $100 to an undercover Illinois State Police officer in the John Hay Homes on Aug. 22, 1996. Undercover officers videotaped the transaction, which shows a man known as "Lucky G," later identified as Broomfield, handing a piece of crack cocaine to a confidential source, who gave it to the undercover officer.

Broomfield has a lengthy Sangamon County record, including a 1985 robbery conviction, for which he was sentenced to three years in prison, and a 1988 conviction for attempted


EXHIBIT E

armed robbery and aggravated battery, in which he allegedly shot a woman in the chest. He received 10 years in prison for those crimes.

He was sentenced in 1994 to another three years in prison after being convicted of reckless discharge of a firearm, which resulted in a man being shot in the leg. Broomfield's most recent Sangamon County offense came last year, when he was sentenced to one year of probation on a theft charge.

Broomfield also has been charged with first-degree murder in Tipton County, Tenn. He allegedly beat, stabbed and strangled a woman in Covington, Tenn., on March 14. Investigating officers in Tennessee have said only that Broomfield knew the victim, Julia Ann Hill.

All content ? 1997- State Journal-Register, The (Springfield, IL) and may not be republished without permission.